I think that's the correct pronunciation, your honor. Glenn Clark representing Craig Allums. This case involves a man who has a disability resulting from a stroke, which has caused a brain injury. And that has caused substantial cognitive limitations. At this point in time, Social Security agrees that the stroke disabled him. There was a subsequent AOJ decision. And at that subsequent AOJ decision, there was That wasn't ever presented to the district court, was it? That's correct. And therefore, may be even waived. So I hope we don't get into this. It wasn't presented to the district court. I don't know why it's probative of an impairment between 9-18, 2006, and 12-31, 2011. It wasn't available at the time that the case was. I understand that it goes for a different time period, right? It goes for a different time period. But the disabling condition was a stroke, a stroke which the record shows occurred prior to the date of the claimant's last insured status. Because the report wasn't performed until nearly two years after your client's last insured date. And I hope you're going for something better than that. OK, I am. But also, I would say that the cognitive impairment grows out of a stroke. And the stroke, there is an MRI. There is a CT. And that shows that that stroke occurred while the claimant was still insured. And the issue in this case is the claimant is not getting his insurance benefits. He's left with a welfare benefit. So in terms of the legal issues in this case, the major legal issue is that the AOJ refused to allow a family member to testify. And Mr. Olems is a brain damaged individual. And it was important for him to put on the evidence of his case. It was important to have other people who've Isn't it true that the AOJ had Jerry's statement on file? The AOJ had third party function reports from both brothers. The AOJ said that the AOJ would leave the record open for a statement by Barry. The AOJ had medical records with various iterations of the brother's concerns and observations. In that instance, what authority do I have to suggest that the AOJ must have a live testimony rather than written testimony? So this court has repeatedly stated that. Well, give me a good case. Because I looked all over, and here we have all these statements. They are in the record. The record was left open for Barry to do something. He didn't. We have all these medical records. Then I want the case that says I've got to have live testimony rather than written testimony. But even if there is such a case, why is it not harmless error? Well, in the second AOJ decision, a brother did come in to testify. If you look at that decision, the judge relied heavily on the testimony from the brother. It's important if you take a look at the AOJ. I'm not going to look at what the AOJ did afterwards. I want to look at what happened here. The brother's written statements do not describe symptoms any more severe than the claimant's own testimony. That being the case, and if the testimony was inconsistent with the RFC, then it would be inconsistent with the medical testimony itself. So all of that said, it's not harmless. Because the RFC controlled, and it was based on the medical testimony. This court has repeatedly stated that testimony from lay witnesses is important. And that is Reganator, Robbins versus. Don't cite me the general rule, because then there's also a general rule that it might be harmless error. And I'm suggesting, first of all, they had all this testimony in the record they could have reviewed. And if, in fact, it's error, which I didn't find it to be error, a dead case, dead on, then I sat back and I said, OK, the written statements don't describe anything more than the RFC already has. Nothing more than is more severe of the plaintiff's own testimony. And the RFC is consistent with the medical testimony. So why is there error that is not harmless? Well, the third party evidence in the record says the claimant is easily confused and often gets lost, even attempting the simplest tasks. The AOJ found that the claimant was able to do simple, repetitive tasks. So the third party evidence in the file contradicted that. And what did the AOJ do with the written statements from the family members in the record? Where did the AOJ discuss that in the decision? Nowhere. The AOJ not only refused to allow the witnesses to come in and testify, then the AOJ ignored the statements from the family members, which were in the record. Now, Judge, this court has repeatedly stated, which you just referred to in the prior case, that if the AOJ is going to reject evidence, that it's not for the district court to come up with reasons. The AOJ needs to come up with reasons. Conant, Brown, Hunter. Well, the AOJ didn't reject the evidence. If I understand the record, the AOJ said, I'm out of time. I've got a busy docket. And I don't have time to hear these witnesses, but I have the statements in the record. And it seemed to me that's a little different than saying, well, I'm not interested in the testimony of your family because it's not admissible. The AOJ didn't do that. She didn't say it wasn't admissible. She said, I'm out of time. And if you take a logical extension of your argument, then you can always, then we have to go on forever. If the AOJ can never say, I'm out of time, I'm sorry, but I have statements in the record. Well, where this court and where the regulations say that third party evidence is important, can you ever have a situation in which the AOJ says, I won't hear any evidence except the testimony from the claimant? And then, and this is clearly contrary to the rules of this court, then in your decision, with regard to the written statements, you don't mention that you received them. You give no reasons whatsoever for rejecting them. And as I say, those third party statements were not consistent with the AOJ's RFC because a third party statement said, this person doesn't have the ability to do simple repetitive tasks. And that was the AOJ's RFC. So the only evidence that the ALJ did here was the, was what, the claimant? The only evidence, right, was the claimant. And the AOJ said, okay, I'm gonna send this out for another examination. I don't wanna hear anything else. And then the decision comes back and it's exactly what happened at the hearing. The judge paid no attention whatsoever to the statements from the family members, did not mention them in the decision any place. Now, I guess I misread or I misled you. Even if I find it to be error, which I think you're suggesting it is, and I came to that, I mean, if I came to the same conclusion, then I looked at what the brother's written statement said. And I said, do they describe anything more severe than the, if you will, your client's own testimony described? I couldn't find anything. And then at that point, I said, well, if the RFC is going to be made, the RFC has to be made with, consistent with the medical testimony. Therefore, if the brother's testimony isn't gonna be any different than the claimant's testimony, and if the RFC reflects what the medical testimony is, then there is no error. It's harmless, because we have a harmless error standard here. I mean, even if you, all those things you're saying are true, we do have a harmless error standard. And I'm just trying to, I did my best to try to look through as to what the harmless error might be. So the, the testimony of the brothers were, that even on a very simple task, that you couldn't show the claimant a simple task and he couldn't follow through. That's what the problem is. Is that any different than what the claimant said? The claimant only said one thing. He said, I have difficulty doing simple things like putting food in the refrigerator. What was the mistake that you made on that? The judge said, and he said, I can't remember what the mistake was. That's the only thing. The claimant testified, I can drive. Yes, the claimant can drive, but he needs someone else to show him where to go. The claimant was not a good witness for himself. The claimant is fighting his disability. He doesn't want to admit that he's disabled. And that's why the third party evidence was really important. And this court has said, for rejecting third party testimony, you have to give germane reasons. And the AOJ didn't do that. Now, I guess what you're saying is, well, if the medical evidence didn't support the man being disabled, then it doesn't matter what the third party testimony was. But I think this court has clearly said that the fact that the third party evidence differs from the medical evidence isn't a reason for rejecting the medical evidence. So that doesn't make it harmless error. Of course, as I explained in the brief, the medical evidence that the AOJ relied on didn't support the AOJ's RFC whatsoever. The social security doctor said that the claimant was malingering. The AOJ said he's not malingering. The social security doctor said the claimant is mentally unimpaired. The AOJ said the claimant is limited to simple repetitive tasks in an environment where people aren't bothering him. So the medical evidence didn't support the AOJ's RFC. There is no substantial evidence to support the decision in this case. Now, there was another medical report, which was from Dr. Kalich, and Dr. Kalich says the man's disabled, but the AOJ didn't follow that. So what is the evidence that the AOJ relied on? Where's the substantial evidence to support the decision in this case? I submit there's none. Well, there was a vocational expert who testified. Yes. And he said that there was a recognition that there were impairments here. The AOJ found there were impairments, but the AOJ said, I give great weight to the social security doctor that examined him. But the social security doctor said no impairments. Social security doctor said- Could you give us a name? Social security has lots of doctors. Oh, Prosey. Okay, you're talking about Dr. Prosey. Yeah, I'm sorry, your honor. Okay, well, excuse me, I have one to ask a question when you're finished with Judge Schroeder, so go ahead. Well, I just, since the AOJ thought there were impairments and looked to the vocational expert, don't you really, don't we really have to accept, don't we have to look at that and see whether that is supported? The vocational expert's testimony is not medical evidence to support the judge's RFC. The vocational expert simply responds to the hypothetical that is supposedly based on medical evidence. The thing that was left out of the hypothetical was what? The thing is that he's unable to perform simple repetitive tasks. That's what Dr. Kalish said. That's what his family members said. That's what the second AOJ found. That's why they found him disabled. I mean, he can't, I'm sorry, your honor. Excuse me, Judge Wallace. I wanted to go back to Dr. Prosey's report, which we can always just reject because he isn't a treating doctor, but we don't do that. We have to take a look at him. Was he a treating doctor? No, no, he was a doctor that Social Security sent Mr. Ollams to see. And we can accept him as a medical doctor. Yes, he's a psychologist. In the AOJ's decision, the AOJ specifically talked about the testimony of Jerry Ollams and stated that Dr. Prosey's treatment notes indicate that Klamath's brother reported being very concerned, et cetera. Klamath's brother reported episodes of danger, et cetera. So all of that was before the doctor, even though the statement of Jerry perhaps wasn't mentioned and he didn't testify. All of that, the AOJ had before the AOJ at the time of the decision and actually commented about it being directly contrary to Dr. Prosey's finding. So I don't see that we've lost anything by not having Jerry testify. Because in fact, what he said to the doctor, the AOJ took consideration of what he said and what the doctor said. So I don't see what the problem is of not having him testify. The problem was that the man's cognition is weak and if you read through all of his testimony, he did a very poor job of explaining what his problems are because. That may be, but the AOJ apparently thought that he had a handle on it, was able to discuss it and actually had the statements of the brother there to the extent the brother is necessary. Dr. Prosey had them and the AOJ even indicated that. Dr. Prosey didn't have the statements from the brothers. The only mention of the statement of the brothers was what's this? The treating physician, Dr. Shaw. I'm looking at administrative record, 2853, the AOJ determined that Jerry Allen's statement was directly contradicted by Dr. Prosey's finding during the medical status examination, which claimant scored a 30-30. What does that mean? Oh, okay. So that is not the AOJ's decision. That is, you're reading from the district court decision. This is a post hoc reasoning from the district court. Look at the AOJ's decision. Okay, the AOJ's decision mentions that on one day, Barry and my claimant went in to see Dr. Shaw and Barry said, this man's cognition is seriously off. And Dr. Shaw gave him a mini mental status exam and he did perfectly on the mini mental status exam. And Dr. Shaw said, based on the information from the brothers, I wonder if this man had a stroke. And Dr. Shaw sent him for a CT scan. And sure enough, the CT scan showed that he had a stroke. No one ever cited the statement to Dr. Shaw in the AOJ decision as a reason to discredit the brother's statement. And in fact, it's no reason to, because that information, which was provided to the doctor, led to the diagnosis of the stroke. I mean, it was clearly important and correct information which allowed the man to be diagnosed. Getting so excited, I'm getting a dry mouth. Judge Wallace, do you have other questions? No. You, thank you. Okay. We've had your argument. I'm sorry for running over. Thank you. That's okay, we took you over, don't apologize. All right, we'll listen to the government. Good morning. May it please the court. Chantal Jenkins for the Acting Commissioner of Social Security. Your honors, in this case, the AOJ gave claimant a full and fair hearing. In addition to the reasons you pointed out, the AOJ also offered the claimant a supplemental hearing, which is noted on page 332 of the excerpts of records, so that if claimant wanted, claimant could present additional witnesses. In addition, the AOJ provided germane reasons for discounting the brother's lay witness statement. The AOJ explained that she gave greater weight to the findings of doctor proceeds and the perfect mental status examination score that claimant also received in a treatment record. So, in your mind, there was no error as to the discounting of the brother's statements because of that one statement in the AOJ record? Under Molina. Sorry. Under Molina, the court has held that the AOJ does not have to address cumulative statements, and in that statement in the AOJ's decision, the AOJ is addressing the brother's concerns, the limitations that they are asserting, and so the AOJ's reasons there are sufficient for that, yes. Well, it seems, I mean, I let him argue what he did. I did not challenge him because it seems a little worrisome to me that the best I can find about discounting the brother's statements when the AOJ did not let them give all the statements they wanted was one sentence, says, I'll believe the doctor more. Well, the AOJ did actually give them the opportunity to provide further statement. I understand, at another time, but at the time when they wanted to give them, they ran out of time and went the other way, and they had all these statements in the file, but they didn't, they weren't allowed to give it that day, and I understand that they said, well, you can do it another time, but bottom line is, after all of that, the statement in the file, the third-party function reports, the fact of the medical records with the brother's concerns, and one statement, I believe the doctor more, is that enough? The AOJ, the concern, the issue is, did the AOJ address the concerns, and that's enough here, because the AOJ actually sent Klayment to a second consultative examination after the hearing. That examiner just happened to be Dr. Procease, so the AOJ relied on Dr. Procease, who examined Klayment twice. He was the last medical source to examine Klayment. He performed extensive cognitive testing. He reported that Klayment had intact concentration, was able to understand questions and perform tasks, and he found that Klayment could perform simple tasks and make simple work-related decisions, and he had the benefit of reviewing not only his previous examination, but he had the diagnostic records as well as the examination from Dr. Kalich, and that, in addition to the fact that Klayment received a perfect score on a mental status examination, those are germane reasons for the AOJ to discount the lay witness statement. Was that the 30-30 test? That's correct. And 30 means? A perfect score. What about the clear and convincing reasons for finding that Allum's testimony was less than fully credible? What are those? I mean, it seems to me there's some routine language there that can be cited every time, but I don't find anything really clear and convincing. Can you help me? Yes, I can. The AOJ provided specific reasons for finding Klayment not fully credible. Where? What? If you turn to page, it's 28 of the administrative record and 51 of the excerpts of record. Okay. I've got it. Okay. The third paragraph from the bottom. Okay. Okay. After further consideration. That starts with the Klayment further testified. All right, I've got it. Okay, so here the AOJ begins discussing the Klayment's alleged mental testimony. And as she knows, the Klayment testifies to problems with processing information, problems with memory, and that there's a disconnect when he goes to complete tasks. And in that same paragraph, the AOJ also discusses that Klayment was able to watch TV most of the day and follow storylines. And then in the next paragraph, she discusses that at the hearing, she observed him to be able to recall events and details, events in great detail. And this discussion is directly related to the Klayment's allegations because he's testifying to problems with memory, problems with concentration. And so the AOJ's discussion here is directly related to that and she's finding that the activities, the hearing observations, that these are two pieces that she's finding don't support the credibility finding. And then she goes on in the next page. The third paragraph from the bottom, she discusses, she says, the crux of this case involves Klayment's alleged mental impairments. And here she's reiterating that the issue here. What page are you on? The next page, which is 52 of the excerpts of record and 29 of the administrative record. Okay. And in the third paragraph from the top, she says, the crux of this case involves the Klayment's alleged mental limitations. And this is based on the Klayment's hearing testimony because when she asked him why he can't work, he talks about the problems with memory and completing tasks. So here she's reiterating that this is the main issue. And she goes on to discuss that there's mild, only mild to moderate diagnostic tests. And then she goes on to discuss Dr. Procey's findings. And she gives great weight to Dr. Procey's findings and Dr. Procey's opine that the Klayment did not have a substantial mental impairment and that he could perform simple tasks. To the extent that there was not a clear and convincing reasons in the record, is that mistake, can it be harmless simply because the RFC is supported by medical evidence? It can be harmless if the issue is, does substantial evidence support the ALJ's decision? So is there enough evidence here to support the ALJ's finding of non-disability? And the court has held that it won't second guess an ALJ's determination if it is supported by substantial evidence. And we have that here. And so we have the ALJ discuss the hearing demeanor, the Dr. Procey's opinion, the activities. And she also does on the following page, on page 53 of the excerpts of record and page 30 of the administrative record, she goes back to the activities at the end of the second paragraph from the bottom. And she states that the Klayment's testimony as to his activities of daily living suggests that he remained capable of performing simple repetitive tasks with the ability to maintain the concentration to perform them. And so here she's crediting his testimony that he could perform these activities and finding that these activities he's testified to, such as driving, are consistent with the finding that he can perform simple jobs like the car washer position that the VE testified where he would be essentially washing cars. I guess my biggest problem with all of this is usually when I see an ALJ who does not find the testimony fully credible, I usually find some place where the ALJ identifies what part of the Klayment's testimony is credible and which is not credible and why. And I don't know whether I quite found it here. That's why I keep asking you about this. And so I'm saying to myself, did the ALJ specifically identify what parts of the testimony were credible or not credible? I don't know that they did. So in that, is there a way to find harmless error for failing to give that kind of determination? I mean, what I'm really saying is, is if the RFC, which is selected by the ALJ, is consistent with the testimony of the Klayment, does the fact that maybe the exact clear and convincing reasons for discrediting, does it make it not as important? And if so, was the RFC consistent with the Klayment's testimony? The RFC isn't entirely consistent with the Klayment's allegations of being disabled. So the ALJ didn't find that he could not perform simple tasks. However, the ALJ's finding that he could perform simple tasks is supported by substantial evidence in the record. And she goes through and identifies all of those reasons here. And this court has held that if the ALJ's decision is supported by substantial evidence, that it won't second guess the ALJ's decision. And here we have an ALJ who had two examinations from psychologists in the record. After the hearing, sent Klayment back for an additional consultative examination. So fully attempting to develop the record and consider Klayment's allegations. And if you look at the decision, going through and weighing the evidence and finding that Dr. Proceeds deserves the greatest weight because he performed this extensive cognitive testing twice, was able to review the diagnostic records and twice gave an opinion that Klayment could perform simple tasks and make simple work-related decisions. Further questions? No, I don't have any other questions. Judge Felder, do you want to wrap up or how would you like to? If you have no further questions, the commissioner respectfully requests that this court affirm the ALJ's decision. Just wait a minute. What is your response here to the argument that the ALJ should have heard from the family as to what this fellow can really do or not do rather than relying on a test that was given by a psychologist who didn't know the guy at all? Do you mean whether the ALJ should have allowed the brother to testify? Yeah. Our response here is that in this case, the hearing actually went much longer than a typical administrative hearing. It was well over an hour. And so the ALJ had been trying to help the Klayment's attorney pose questions to the vocational expert and it appears she just ran out of time. And so in this instance, she did what was appropriate and she offered a supplemental hearing and that would have provided Klayment additional opportunity to provide witnesses. But I guess the main issue is, did she consider the complaints, the limitations that were being alleged? And she did, in this case, consider those limitations because the brother's concerns about performing simple tasks, being able to concentrate, having adequate memory, those concerns were addressed in the treatment record and the ALJ considered them and found that they weren't supported by the other evidence of record. In regards to that episode, I had thought that the Klayment had already waived having any more information coming from the brother. At the administrative record, the ALJ says that additionals can be provided by Vary and then the attorney says, I don't think I want to provide any, you know, in terms of written statement. I think that the written statements would be just a redundant or to submit more written statements. ALJ, okay. Attorney, they're here if you want, like to hear from them, but it seems like we don't. He was given the opportunity to put in more written statements and said, no, he wasn't doing what I did. That's correct. And after the hearing, in addition, she sent a letter offering him the opportunity to provide written statements again or to have a supplemental hearing. Thank you. Thank you. You have 30 seconds. I took you way over, but I'll give you 30 seconds. Thank you, Your Honor. The ALJ ruled that we won't hear any witness testimony. I didn't argue with her after she ruled that. She's not a judge, that when she makes a ruling on something that she's asking you for argument on it. What's your response? That you had an opportunity to have a supplemental hearing and you didn't take it? I don't know what the government's talking about of there being an opportunity for a supplemental hearing. The judge said we're out of time and didn't offer any supplemental hearing.  that subsequent to the hearing, she offered to have another hearing, but that was not accepted. What happened was there was a second report from Dr. Procey that came out. And with that, there's a standard proffer letter that came with that. And I responded with a letter to that saying that Dr. Procey's report should have been thrown out. And then she ruled at that point, she never offered any further hearing and no time did she offer to hear any further witness testimony. She didn't ask me if I thought the witness was there. I told her at the beginning that I wanted that witness to testify. She said, we're out of time, no witnesses. I understand. But at that point, you had the opportunity to give another written statement. That's right. And it looks like that was rejected by you. That's right. And I rejected that. I thought that the live testimony was what was important. The written testimony was extensive in the record already at that point. And I think it was too bad that she didn't hear it. I think it would have made a difference because the brothers give a very different picture of it. And there wasn't an offer for a further hearing. Maybe what they're saying is there's something in that proffer letter, but there wasn't. You're saying that your understanding of the record, if we read the entire record, there really was never an opportunity to put on the lay testimony. Exactly, exactly. Thank you for your argument. And thank you so much for giving me the extra time, Your Honors. Case 1415751, Allums versus Colvin is submitted and we are adjourned for today. Thank you. Thank you.
judges: Wallace, Schroeder, N.R. Smith